

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 2, 2025

<u>**BY ECF**</u>

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re:    <u>**United States v. Andrey Kostin et al., 24 Cr. 91 (GHW)**</u>

Dear Judge Woods:

     The Government respectfully writes to oppose the defendants' May 29, 2025 motion to preclude the Government from "introducing evidence about purported connections between CC-3 and [Andrey] Kostin" at trial due to the timing of the Government's May 16, 2025 production of three delisting petitions (the "Petitions").  (Dkt. 199 at 1-2).

     As further detailed below, as part of his work investigating a separate and wholly unrelated matter involving none of the line attorneys on this case, a trial attorney in the Department of Justice's Money Laundering and Asset Recovery Section who serves in a supervisory role in this case  (the "MLARS Attorney") possessed two of the Petitions since January 14, 2025 (the "January Petitions") and the third Petition (the "Third Petition") since May 14, 2025.  The various petitions were drafted on behalf of persons and entities previously sanctioned by the Department of the Treasury's Office of Foreign Assets Control ("OFAC") and sought a lifting of those sanctions. They were addressed to and prepared for OFAC for the benefit of parties with no known connection to the defendants or the issues, entities, or transactions in the current prosecution. Nevertheless, on May 14, 2025, the very afternoon he received the Third Petition, the MLARS Attorney for the first time recognized the potential relevance of the Petitions to this case and informed the line attorneys of them.  The line attorneys immediately requested the Petitions from the MLARS Attorney and promptly produced them in its next discovery production on May 16, 2025, a full month prior to the scheduled trial date.

     The Petitions are not *Brady* material.  The Government produced them as part of its policies and practices providing for broad disclosure.  If the MLARS Attorney had appreciated at any point prior to May 14, 2025, that the January Petitions he received in a separate matter had any relevance to this case, Government counsel would have done precisely what they did when they recognized the issue in May: promptly produce the files.

     The defendants aim to transform an instance of inadvertence into an evidentiary advantage and a distorted trial. To do so, they have focused on portions of the Petitions that discuss a recent

background review and due diligence check on CC-3, an individual whom the Government alleges acted on behalf of sanctioned Russian Andrey Kostin in managing and transferring real property in Aspen, Colorado, in violation of U.S. sanctions.  The defendants argue that this due diligence supports CC-3's independence from Kostin and therefore constitutes *Brady* material, despite the due diligence having been performed years after the conduct currently at issue in this prosecution and with no obvious relevance to that conduct.  First, even assuming the Petitions qualified as *Brady* material (and as described below, they do not), the timing of the Petitions' production does not undermine the defendants' opportunity to fairly try their case.  The Government produced the Petitions more than four weeks before trial is scheduled to begin.  The defense, therefore, already has four weeks to make use of the files.  But even if that was not the case, defendants' requested relief—to preclude the Government from introducing any evidence of CC-3's connections to Kostin, including clear evidence that CC-3 did in fact manage financial and business affairs on Kostin's behalf—would, if granted, deprive the jury of relevant facts concerning connections between CC-3 and Kostin, resulting in an incomplete and misleading factual presentation which would deprive the public of a verdict in this case based on the merits.  The decisional law of this Circuit provides no support for such an extreme outcome, and though the Federal Rules of Criminal Procedure empower the Court to fashion relief when discovery lapses occur, fairness and legal authority counsel that an adjournment—which has already been consented to for up to 30 days by the defense in connection with the anticipated court-ordered evidentiary hearing regarding the execution of certain search warrants—would suffice to resolve any prejudice.

Though the defendants do not seek an adjournment in connection with the instant motion— presumably because they hope for the advantage of avoiding a trial wherein the Government introduces evidence of the connections between CC-3 and Kostin—that is the only remedy the law favors in this circumstance.  Indeed, preventing the Government from introducing inculpatory evidence would undermine the jury's ability to fairly and justly try the defendants on the Indictment's serious charges.

## I.    Background

The Indictment in this case charges defendants Vadim Wolfson and Gannon Bond, for the time period between April 6, 2018, and September 2019, with one count of conspiring to violate the International Emergency Economic Powers Act ("IEEPA"), and two counts of violating IEEPA, in violation of 50 U.S.C. § 1705, Executive Order 13661, 31 C.F.R. § 589.201 (for all counts), and 18 U.S.C. § 2 (for the substantive counts) (the "Indictment").

Trial is presently scheduled to commence on June 16, 2025.[1]

**Defendants' Discovery Requests.**  Throughout this case, the Government has responded to defendants' discovery inquiries.  As relevant here, on September 10, 2024, Wolfson's counsel

---

[1] In a recent filing on May 30, 2025, both parties "acknowledge that some adjournment of the trial is needed" to allow for a separate suppression hearing, with the defendants requesting "an adjournment of no longer than 30 days" and the Government requesting a "slightly longer adjournment—an additional approximately three weeks past the 30 days to which defendants consent."  (Dkt. 201).

sought production of *Brady* materials relating to CC-3 and asked the Government to "[c]onfirm whether, and to what extent, Treasury generally and [the Treasury Department's Office of Foreign Assets Control ("OFAC")] specifically have been involved in the investigation or prosecution of this case" and "[c]onfirm whether the prosecution team has, in connection with this case or any related matters, viewed or had access to the files of Treasury generally and OFAC specifically and, if so, whether all those records have been produced."  (Ex. A to Dkt. 199).  Two days later, the Government accurately responded by noting that the Government "believe[s] [it] ha[s] fully complied with [its] *Brady* obligations and do[es] not have any additional materials to produce in response to your request below.  OFAC and Treasury were not involved in the prosecution or investigation of this case, and [the Government] did not review any OFAC or Treasury files in connection with this case."[2]  (Ex. B to Dkt. 199).  On December 10, 2024, as relevant here, Wolfson's counsel requested documents in the Government's control related to "CC-3, and any business owned, operated, or in any way affiliated with [CC-3], including but not limited to the connection (or lack thereof) between the business interests of [CC-3] and Mr. Kostin."  (Ex. C at 3-4 to Dkt. 199).  On January 10, 2025, the Government again accurately responded by explaining that "[t]he material responsive to this request in the possession of the prosecution team has been produced pursuant to Fed. R. Crim. P. 16."  (Ex. E at 4 to Dkt. 199).

**MLARS Attorney Comes into Possession of the Petitions.**  Following the foregoing correspondence, on January 14, 2025, the MLARS Attorney received from a third party the January Petitions as part of his work investigating an entirely distinct matter in which none of the line attorneys on this case have participated.  That separate matter does not involve Andrey Kostin, CC-3, or the defendants.  The MLARS Attorney briefly reviewed the January Petitions, but did so in the context of a wholly separate matter and without regard to any mention of CC-3 or the instant prosecution.  At that time, the MLARS Attorney did not recognize the potential relevance of the January Petitions to this case.  Four months later, on May 14, 2025, again in the context of a completely separate matter involving none of the line attorneys on this case, the MLARS Attorney received from OFAC a copy of the Third Petition (Exhibit H to Dkt. 199).  In reviewing the Third Petition, the MLARS Attorney, for the first time, appreciated its tangential bearing on this prosecution.  With that new understanding, the MLARS Attorney also reviewed the copies of the January Petitions (Exhibits F and G to Dkt. 199).[3]  On May 14, when the MLARS Attorney for the first time recognized the potential relevance of each to this case, he informed the line attorneys for the first time of the Petitions.  The line attorneys immediately requested the Petitions from the MLARS Attorney and promptly produced them on May 16, 2025.[4]

---

[2] In the same email, the Government informed defense counsel that it was preparing a supplemental Rule 16 production containing various materials that were ultimately produced on September 20, 2024.  Among those materials were a delisting petition regarding a superyacht that the Government had received from a third party (*i.e.*, not from OFAC).

[3] These various petitions had been submitted to OFAC in June, August, and October 2024, but were not provided to MLARS at the time of submission to Treasury.

[4] All of the attachments to the Petitions concerning CC-3 that are in the possession of the prosecution team, including the Supervisor, have been produced.  (Dkt. 199 at 9).

**Defense Has Not Articulated Any Use of the Petitions Since Receipt.** Since their receipt of the Petitions on May 16, 2025, over two weeks ago and thirty-one days before trial, the defendants have not cited any step they have taken to make use of this information before trial.

## II.    The Motion to Preclude Should Be Denied

Although the Petitions are not *Brady* material, the Government produced them approximately four weeks prior to the start of trial. Certainly, had the line attorneys been aware of the January Petitions when they came into the Government's possession in January, the Government would have produced them at that time. But these circumstances do not warrant the extreme remedy of preclusion of evidence. Even assuming the Petitions qualify as *Brady* material, the defense has meaningful time before trial to make use of the Petitions. And even if the Court determines that there is not currently sufficient time for the defense to investigate, the appropriate remedy is a reasonable adjournment to provide additional time to use the Petitions however the defense would like, especially as both parties contemplate some adjournment is necessary in light of a separate hearing. (Dkt. 201). In contrast, the remedy that the defense seeks—preclusion— would produce a fundamentally unfair trial in which the jury would be denied the benefit of the facts. This result would be inconsistent with the public interest and the law.

**The Petitions Are Not *Brady* Material.** The Petitions are not material evidence that is favorable to the accused. The Petitions were submitted to Treasury's OFAC by two sanctioned individuals and their associated sanctioned entity (the "Sanctioned Parties") for the purpose of convincing OFAC to remove economic sanctions previously imposed on them. The Government is not aware of any connection between the Sanctioned Parties and Kostin or the defendants in this case. The Petitions do not address the conduct, entities, or transactions at issue here. Nevertheless, the Petitions do make reference to CC-3, who the Government alleges assisted with the management of Kostin's shell companies and assets. They purport to describe certain of her business activities several years after the acts alleged in the Indictment.

In their letter, defendants argue that these Petitions constitute *Brady* material insofar as they recount a due diligence or business background check the Sanctioned Parties performed on CC-3. But to be clear, the Petitions all concern the same due diligence check, which was performed in September 2022—three years after the conduct at issue in the Indictment, which ran from April 2018 to September 2019. Any relevance of this later-in-time evaluation to this case is far from clear and marginal at best. Further, nothing about the due diligence check or anything else in the Petitions suggests that the Sanctioned Parties who submitted the petitions to OFAC have or had any awareness of or information related to the specific conduct alleged in the Indictment or the particular entities connected to CC-3—particularly, Capital Business Finance and CapitalInvest— involved in the transactions at-issue in the Indictment. It should be noted that the Government does not claim that CC-3 is without means or that she acted on behalf of Kostin, and only Kostin, in all matters. Thus, there is nothing inconsistent with the September 2019 payment being for Kostin's benefit and the asserted defense that "CC-3 was an independently wealthy, successful businesswoman who had many ventures with no discernible nexus to Kostin." (Dkt. 199 at 1).

Accordingly, the Petitions are not *Brady* material.

    **The Government Did Not Act in Bad Faith.**  The law is clear that preclusion is an extreme and undesirable remedy and not appropriate, even for an acknowledged *Brady* violation, in the absence of bad faith.  *See, e.g.*, *United States v. Monsanto Lopez*, 798 F. App'x 688, 690-91 (2d Cir. 2020) (affirming district court's order of a brief continuance rather than preclusion, and holding that defendant suffered no prejudice where he "received the materials he argues were untimely produced over a month before trial ultimately began"); *United States v. Marshall*, 132 F.3d 63, 70 (D.C. Cir. 1998); *United States v. Guerrero*, No. 09 Cr. 339 (RWS), 2010 WL 1790400, at *1 (S.D.N.Y. Apr. 30, 2010) ("Absent bad faith on the part of the Government, the preclusion of evidence is rarely an appropriate sanction for discovery delay."); *United States v. Graham*, No. 99 Cr. 271 (CFD), 2000 WL 1902425, at *2 (D. Conn. Dec. 21, 2000) (preclusion of evidence not appropriate where government did not act in bad faith and where "any prejudice to the defendant would be cured by granting her a continuance of the trial . . . . A continuance is the least severe remedy necessary to preserve the defendant's right to a fair trial, promote the fair and efficient administration of justice, and ensure full compliance with Rule 16(a)."). This approach is consonant with the general principle that "suppression of evidence . . . has always been our last resort, not our first impulse," and that, due to the "exclusionary rule's costly toll upon truth-seeking and law enforcement objectives," it is "applicable only where its remedial objectives are thought most efficaciously served." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (quoting *United States v. Leon*, 468 U.S. 897, 907 (1984); *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 364-65 (1998); and *United States v. Calandra*, 414 U.S. 338, 348 (1974)) (internal quotation marks and brackets omitted).

    There was no bad faith here (and the defendants allege none).  To the contrary, in addition to its provision of discoverable material, the Government has undertaken extensive efforts to provide additional, non-discoverable information to assist the defense in its preparation for trial. Even though, under 18 U.S.C. § 3500(a), witness statements are not subject to disclosure "until said witness has testified on direct examination in the [June 2025] trial of the case," the Government has been voluntarily producing witness statements since May 2024, over 13 months before trial, long before it was required to.  Further, in August 2024, the Government separately met with counsel for both Wolfson and Bond to walk through in substantial detail the Government's anticipated evidence at trial.  Additionally, the Government has responded to defendants' discovery inquiries throughout the pendency of this case.  Against that backdrop, the May 16, 2025, production of the Petitions—immediately after the MLARS Attorney recognized the potential relevance of the Petitions to this case, and immediately after the line attorneys on the case became aware of the Petitions' existence—is far from the bad faith that would warrant the evidentiary sanction requested by the defendants.

    Further, as soon as the line attorneys on the case became aware of the Petitions' existence on May 14, they promptly produced them on May 16.  As noted above, the MLARS Attorney received a copy of the Third Petition on May 14, 2025, in the context of a completely separate matter that involved none of the line prosecutors in this case, and was completely unrelated to Kostin, the defendants, or the entities in this case.  When the MLARS Attorney recognized the potential relevance of the Petitions to this case, he contacted the line attorneys in SDNY, who requested that the MLARS Attorney immediately send the Petitions to the line attorneys.  After some limited and appropriate redactions were applied, each of these documents were produced to defendants on May 16, 2025.  There was, in short, no attempt to intentionally withhold

discoverable material. Indeed, the Government's method of disclosure shows its good faith, as the Government prominently, clearly, and accurately labeled the Petitions in the first row of its May 16 discovery cover letter as "Delisting Petitions" (Ex. J to Dkt. 199) and, as pictured below, in the first electronic folder of the production as "1. Delisting Petitions – APO [Attorney's Possession Only]."



Likewise, the Government explained how and when it came into possession of the Petitions in response to defendants' subsequent inquiries.

In sum, there is no evidence of bad faith, and preclusion is therefore not justified. *Monsanto Lopez*, 798 F. App'x at 690-91; *Marshall*, 132 F.3d at 70; *Guerrero*, 2010 WL 1790400, at *1; *Graham*, 2000 WL 1902425, at *2.

**Defendants Have Suffered No Prejudice.** Defendants wrongly assert that they have suffered "severe, irreparable prejudice" from the Government's disclosure a month prior to trial. (Dkt. 199 at 9). To support their claim of prejudice, they note that with earlier production of the Petitions, they could have sought "Rule 15 testimony," "discovery directly from OFAC," and to develop "other leads, including by speaking to third parties like banks and law firms referenced in the delisting petitions to obtain further evidence of due diligence conducted on CC-3." (*Id.*). Defendants' earlier discovery requests for any Treasury or OFAC files in the possession of the prosecution team, however, demonstrate that they were aware that the charges involved violations of sanctions imposed by OFAC and that OFAC or Treasury could be in possession of relevant materials. Defendants thus could have requested discovery from the U.S. Department of the Treasury regarding any relevant materials at an earlier date. Furthermore, the identity and alleged role of CC-3 in the charged conduct, and the fact that CC-3 has been sanctioned by OFAC, has been well known to the defendants from the Indictment and Rule 16 discovery, and accordingly, they could have directed requests to OFAC and Treasury to produce materials pertaining to CC-3 at that time. Defendants have had ample time to investigate CC-3's background and business connections, including specifically requesting discovery from OFAC or the U.S. Department of Treasury of any materials relating to CC-3.

Here, the defense has been on notice of the content of the Petitions since at least May 16, 2025, one month out from trial.[5] That is a reasonable amount of time for the defense to make

---

[5] Indeed, the defendants were on notice of certain materials contained in the Petitions months earlier, as portions of the recent disclosures are duplicative of material previously produced by the Government to the defendants in discovery. The defendants complain that one of the delisting petitions recently produced refers to CC-3's 2021 participation "in a public offering on the London Stock exchange, during which she had passed the Know-Your-Customer (KYC) protocol of

meaningful efforts to effectively use the information in preparing for trial. Despite having had these materials in their possession for two weeks, the defendants are silent as to any efforts they have taken since receiving the disclosures to make use of this information before trial, including any steps to contact relevant individuals or issue subpoenas. Regardless, as discussed below, if the Court determines that the evidence constitutes *Brady* material, the appropriate remedy is an adjournment, not preclusion.

      **Any Prejudice Can Be Addressed By A Reasonable Adjournment.** Finally, if the Court finds that this is *Brady* material and there is not currently sufficient time to investigate., the proper remedy at this stage, and under these circumstances, is a reasonable adjournment to allow defendants to investigate and develop the purportedly exculpatory information. Because courts should select the "least severe remedy necessary," courts generally address any prejudice through a continuance of trial where possible. *Graham*, 2000 WL 1902425, at *2; *see also Marshall*, 132 F.3d at 70; *United States v. Pineros*, 532 F.2d 868, 871 (2d Cir. 1976). Here, where defendants received the Petitions thirty-one days prior to trial, there is no plausible basis—and the defense has advanced none—upon which to argue that the risk of prejudice cannot be addressed by a reasonable continuance. A continuance is the preferred remedy "because it gives the defense time to alleviate any prejudice it may have suffered from the late disclosure." *Marshall*, 132 F.3d at 70 (citing *United States v. Euceda-Hernandez*, 768 F.2d 1307, 1312 (11th Cir. 1985)); *see also Monsanto Lopez*, 798 F. App'x at 690-91 (continuance of trial after Government's late disclosure of evidence was sufficient to cure any prejudice, even if Rule 16 violation occurred); *Pineros*, 532 F.2d at 871 (the court should consider, inter alia, "'the feasibility of rectifying [any] prejudice by a continuance'" (quoting advisory committee notes on Rule 16(g))); *Graham*, 2000 WL 1902425, at *2 ("A continuance is the least severe remedy necessary to preserve the defendant's right to a fair trial, promote the fair and efficient administration of justice, and ensure full compliance with Rule 16(a).").

      If it is the case that the defense lacks sufficient time to analyze and make use of the January Petitions, the solution is apparent: provide that time. A modest continuance here would be commensurate with the approach taken in other cases where discovery is produced late; any other remedy would be out of step with the case law. *See, e.g.*, *United States v. Steiner*, No. 19 Cr. 295 (HG), 2022 WL 2390943, at *2 (E.D.N.Y. July 1, 2022) (defendant "complains that the Government provided the latest batches of discovery less than a month before trial. While that argument may have had some purchase in April when the issue was first raised, it no longer does now because of the continuance of the trial date. Defendant nowhere suggests that the extra time afforded by the continuance is insufficient to review the new discovery." (citations omitted)); *United States v. Chang*, 574 F. Supp. 3d 94, 99 (E.D.N.Y. 2021) ("The Court concluded that the Harrell Memorandum was *Giglio* material and should have been disclosed by the government to Defendant earlier rather than on the eve of trial. To remedy this delay, the Court postponed the trial to provide the Defendant additional time to investigate this evidence further." (citations

---

██████████████████████████████ " Almost 14 months ago, on March 27, 2024, the Government produced a document that disclosed this precise set of 2021 KYC checks and named the banks and law firm involved. In fact, defendants used this previously produced material to depose ████████, a Cyprus-based attorney who represented CC-3 and certain of her entities.

omitted)); *United States v. Tomasetta*, No. 10 Cr. 1205 (PAC), 2012 WL 896152, at *7 (S.D.N.Y. Mar. 16, 2012) (two-month adjournment for late production of 43 boxes of materials); *Graham*, 2000 WL 1902425, at *2 ("[A]lthough the Court concludes that the statements and other relevant wiretap information may be important to Ms. Graham's defense, preclusion of the statements is not warranted in this case. It is likely that any prejudice to the defendant would be cured by granting her request for a continuance of the trial in order to allow her to review the statements and, if necessary, file a motion to suppress or other motions.").

In short, although the thirty-one days the defense has in which to use the Petitions in preparation for trial is not insignificant, to the extent the Court determines that more time is needed, the appropriate remedy is a tailored adjournment to provide the defense with additional time to consider and analyze those records.

* * *

For the foregoing reasons, the Court should deny defendants' request to prohibit the Government from introducing evidence of the connections between CC-3 and Kostin. To the extent the Court determines that the timing of production of the Petitions poses any danger of prejudice, the appropriate remedy is an adjournment of trial. The Government is available to address any matters or inquiries from the Court as to the foregoing.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____/s/_____
    Emily Deininger / David R. Felton
    Assistant United States Attorneys
    (212) 637-2472 / -2299


    MARGARET A. MOESER
    Chief, Money Laundering and
        Asset Recovery Section
    Criminal Division
    U.S. Department of Justice

By: _____/s/_____
    Oleksandra Johnson
    Trial Attorney


cc:     Counsel of Record (by ECF)